UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHEMEON SURFACE TECHNOLOGY, LLC, | Case No. 3:15-CV-0294-MMD (VPC) |
| Plaintiff, | **ORDER** |
| v. | |
| METALAST INTERNATIONAL, INC., et al., | |
| Defendants. | |
| AND RELATED CLAIMS. | |

Before the court is plaintiff's motion to compel (ECF Nos. 151, 152 & 153). Defendants opposed (ECF Nos. 156, 157 & 158), and plaintiff replied (ECF Nos. 163 & 164). On August 11, 2016, the court heard oral arguments on the motion and other pending matters at the case management conference (ECF No. 166). The court directed that to the extent defendants asserted certain documents are protected by the attorney-client privilege, that defendants provide a privilege log for plaintiff's review. *Id.* Counsel for the parties then met, and plaintiff challenged thirty-four email communications as falling within the subject matter waiver of the attorney-client privilege (ECF No. 175). Defendants submitted the thirty-four emails for the court's *in camera* review (ECF No. 176).

**I.   Background and Procedural History**

Metalast International, LLC (the "LLC") was formed in 1994. The LLC operating agreement provides that Metalast International, Inc. (the "INC") was the manager of LLC and had full authority to act on behalf of the LLC, which included running the LLC's daily operations (ECF No. 152, Exhibit 2). Co-defendant, David Semas ("Mr. Semas"), was the President and CEO of the INC, and in that capacity, was responsible for the overall supervision

of LLC's business. *Id.* Mr. Semas was also charged with effectuating the decisions of the manager, INC, in connection with the management of the LLC. *Id.*

Ian Burns ("Mr. Burns") served as the intellectual property attorney for both the INC and the LLC for approximately twenty years (ECF No. 152; *see, e.g.,* Exs. 2, 3, 5, & 6). There is no dispute that Mr. Burns provided legal advice to both the LLC and the INC on issues concerning the development, acquisition, registration, ownership, protection, licensing, and assignment of intellectual property rights, including trademarks. Mr. Burns was directly involved in the registration of the METALAST marks, which are the subject of the current lawsuit. *Id.* Mr. Burns applied for trademark registrations at the U.S. Patent & Trademark Office ("PTO") related to the METALAST mark and other services related to trademarks assignments and licensing. *Id.* The LLC paid all of Mr. Burns's attorney's fees. *Id.*

In April, 2013, a state court found the LLC insolvent and appointed a receiver to oversee it (ECF No. 152, Ex. 13). In connection with the receivership, the state court issued a preliminary injunction prohibiting the LLC and the INC from ". . . transferring, assigning, selling, conveying . . . concealing, or in any manner whatsoever destroying or disposing of the whole or any part of the assets of the receivership estate" and from "[d]oing any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of the proceeds of the receivership estate in whatever form the interest is held . . . ." *Id.*

Plaintiff alleges that on May 7, 2013, during the pendency of the receivership, Mr. Semas caused the INC to assign all of its rights in the METALAST trademark to himself, as an individual (ECF No. 152, Ex. 14.) Seven months later, on November 4, 2013, the state court approved the sale of LLC's assets out of the receivership to plaintiff. *See id.* Ex. 12. Believing it had acquired the rights to the METALAST mark, plaintiff changed its name to Metalast Surface Technology. *See* ECF No. 108. It was not until March 21, 2014 – after the assets had been transferred and the receivership terminated – that the assignments from the INC to Mr. Semas were filed with the PTO and made public (ECF No. 152, Ex. 14).

Following these events, Mr. Semas and his wife filed for Chapter 11 protection, and plaintiff filed a proof of claim in the amount of $4,028,232.57, including $471,582.08 that Mr.

1   Semas personally guaranteed (ECF No. 108).  Plaintiff and the Semases thereafter entered into a
2   settlement agreement, but the parties dispute which trademark assets were awarded to plaintiff as
3   part of the receivership.  *Id.*  This lawsuit followed.

4   When plaintiff acquired the LLC's assets, it acquired all of the LLC and INC legal files,
5   which were intermingled and contained in the LLC's database (ECF No. 153).  There were
6   voluminous legal files, including attorney correspondence, draft and final legal documents, and
7   there was no segregation of the documents on the basis of the LLC or the INC.  *Id.*  The
8   documents ranged from hard copy documents to electronic files, and the legal files in electronic
9   format were all stored in LLC's document database, which the LLC created, paid for and
10  maintained.  *Id.*  The legal files include numerous communications to and from Mr. Burns, and,
11  as a result, many communications to and from Mr. Burns were included in the legal documents
12  which are in plaintiff's possession.  *Id.*

13  It is undisputed that at no time has INC, or any of its former or current principals, stated
14  that plaintiff should not be in possession of the legal documents that plaintiff obtained in
15  connection with LLC acquisition, nor has INC or it its current or former principals requested that
16  any legal documents be returned.  *Id.*  During discovery, plaintiff produced responsive legal
17  documents in its possession, which included many attorney-client communications involving Mr.
18  Burns (ECF No. 152, Exs, 5, 6, 9, & 28).  Neither INC nor its former or current principals
19  objected to this production, sought to claw back the materials on the basis of attorney-client
20  privilege or attorney work product, or made any other complaints about this production (ECF
21  No. 152).

22  In April 2016, plaintiff served a request for production of documents, and defendants
23  objected that the requested documents were subject to the attorney-client privilege.  *Id.,* Exs. 15
24  & 16.  After a hearing on the motion to compel, two case management conferences, and several
25  meet-and-confers between counsel, plaintiff challenged the thirty-four emails as falling within
26  the subject matter waiver of the attorney-client privilege.  These emails were submitted for *in*
27  *camera* review, and this order follows.

28

## II. Discussion

The question in what remains of this dispute is whether defendants waived the attorney-client privilege as to the remaining email communications submitted for the court's *in camera* review. The attorney-client privilege protects confidential communications between a client and his or her attorney for the purpose of obtaining or dispensing legal advice. *United States v. Chen,* 99 F.3d 1495, 1501 (8th Cir. 1996). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn v. United States,* 449 U.S. 383, 389 (1981). Federal privilege law applies where the court's jurisdiction is based in part on federal question claims with pendent state law claims. *See Agster v. Maricopa Cty.,* 422 F.3d 836, 839 (9th Cir. 2005).

The burden of establishing the attorney-client relationship and the privileged nature of each communication lies with the party claiming the privilege. *United States v. Bauer,* 132 F.3d 504, 507 (9th Cir. 1997). "One of the elements that the asserting party must prove is that it has not waived the privilege." *Weil v. Inv./Indicators, Research & Mgmt., Inc.,* 647 F.2d 18, 25 (9th Cir. 1981). Waiver may be express or implied. *Bittaker v. Woodford,* 331 F.2d 715, 719 (9th Cir. 2003). The voluntary disclosure of privileged or work product information to third parties constitutes a waiver and destroys any privilege claims. *See Weil,* 647 F.2d at 24. The scope of the waiver is broader than the communications themselves, and "it has been widely held that voluntary disclosure of the content of a privileged attorney communications constitutes waiver of the privilege as to all other such communications on the same subject." *Id.*

*In re In-Store Advertising Sec. Litig.,* 163 F.R.D. 452 (S.D.N.Y. 1995) is instructive on this issue. The court considered the effect of a transfer of assets from In-Store, which reorganized in bankruptcy as Emarc. Emarc then transferred certain assets to Valassis, including 250 documents. *Id.* at 455-56. In subsequent securities litigation related to In-Store, Valassis produced the documents in response a third-party subpoena. This drew objections from certain defendants and a law firm who contended that at least some of the documents were protected by the attorney-client privilege. The court rejected the claims of privilege and stated, ""When those

- 4 -

1   communications were transferred to Valassis in connection with the sale of assets by Emarc to
2   Valassis, Emarc thereby waived any privilege still in effect as to those communications. . . . The
3   former attorney of In-Store. . . cannot claim the privilege that has been waived by the successor
4   to its former client." *Id.* at 458.

5         The analysis in *In-Store* is persuasive in this case.  Here, when plaintiff purchased the
6   Metalast assets out of receivership, the co-mingled legal files of the LLC and the INC were
7   included.  Plaintiff admits that it has many LLC and INC legal documents in its possession, yet
8   defendants never sought return of the documents, nor did they attempt to claw back materials
9   based on attorney-client privilege.

10         It is the burden of party asserting the privilege to establish all of the elements of the
11   privilege.  *United States v. Marton,* 278 F.3d 988, 999-1000 (9th Cir. 2002).  One of the elements
12   the party claiming the privilege must prove is that it has not waived the privilege.  *Weil,* 647 F.2d
13   at 24.  Since the basis for the attorney-client privilege is to protect confidential communications,
14   that purpose ends when confidential communications are voluntarily disclosed to a third party.
15   Defendants asserted the attorney-client privilege in refusing to produce the documents at issue,
16   yet their opposition contains no discussion whatsoever concerning the pivotal issue of whether
17   there was a waiver as to attorney-client communications involving legal services associated with
18   the LLC or INC's development, acquisition, registration, ownership, protection, licensing, and
19   assignment of intellectual property rights.  *See generally* ECF No. 156.  By failing to oppose
20   plaintiff's claim of waiver of the privilege, defendants concede the point.  LR 7-2(d).

21         The court finds that defendants' voluntary disclosure of the attorney-client
22   communications constitutes a waiver of the privilege "as to all other such communications on the
23   same subject." *Weil,* 647 F.2d at 24.  By "the same subject," the court finds this includes the
24   provision of legal services related to the development, acquisition, registration, ownership,
25   protection, licensing, and assignment of intellectual property rights for the LLC and the INC.

26         As to the thirty-four documents submitted to the court *in camera*, the court finds that
27   these documents relate to the universe of documents included in the subject matter waiver;
28   therefore, they are not entitled to any privilege protections.

### III. Conclusion

Based upon the foregoing, plaintiff's motion to compel (ECF No. 151) as it concerns the thirty-four documents submitted *in camera* is **GRANTED.** Defendants shall produce these documents to plaintiff's counsel within three court days of this order.

Defendants shall make arrangements to have the *in camera* documents picked up from the court no later than **Thursday, September 22, 2016** or they shall be destroyed.

**IT IS SO ORDERED.**

DATED: September 15, 2016.

_____
UNITED STATES MAGISTRATE JUDGE