UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHEMEON SURFACE TECHNOLOGY, LLC, | Case No. 3:15-cv-00294-MMD-VPC |
| Plaintiff, | ORDER |
| v. | |
| METALAST INTERNATIONAL, INC. *et al.*, | |
| Defendants. | |
| AND RELATED CLAIMS | |

I.    **SUMMARY**

The dispute stems from the breakup of a business and disagreement over the terms of a subsequent settlement agreement. Before the Court is Defendants-Counterclaimants David M. Semas ("Semas") and Metalast International, Inc.'s ("MII") (collectively, "Defendants") Motion for Partial Summary Judgment on Counterclaim for Breach of Contract ("Motion"). (ECF No. 130.) Counter-defendants Chemeon Surface Technology, LLC, Dean S. Meiling and Madylon Meiling (collectively, "Chemeon") have responded (ECF No. 137) and Defendants have replied (ECF No. 147).

II.    **RELEVANT BACKGROUND**

The facts as relevant to the claim for breach of contract raised in the Motion are as follows. MII managed Metalast International, LLC ("the LLC") when the LLC was placed into receivership in April 2013. (ECF No. 137-1 at 5.) Chemeon's predecessor

acquired the assets of the LLC in November 2013. (ECF No. 137-6.) Semas filed for bankruptcy the next month. (ECF No. 137 at 5.) The LLC filed creditor claims against Semas and initiated an adversary action.[1] (*Id.*)

In the adversary action, the parties participated in a court mediated settlement conference on January 27, 2015. (ECF No. 130-1.) The parties reached a settlement, the terms of which were placed on the record ("Settlement Agreement"). (ECF No. 130-1.) The terms at issue in the Settlement Agreement are as follows ("Disputed Provision"):

> That there is a trademark regarding the name Metalast. There is a dispute regarding ownership. That dispute has been resolved as follows:
> Metalast Surface Technology through the Meilings will continue to use the mark for 90 days following entry of the order approving the settlement agreement by Judge Beesley, if he does approve it. At the end of that 90-day period, Metalast Surface Technology, the Meilings, and any other entity in which the Meilings have an interest, will no longer be able to use the name Metalast in any fashion or manner whatsoever. Following that 90 days, the mark will be owned by Mr. and Mrs. Semas, or any entity in which they choose to transfer that mark.

(ECF No. 130-1 at 6:24-7:11.) On March 11, 2015, Judge Beesely approved the settlement, triggering the 90 period for use of "the mark" by the Meilings. (ECF No. 130 at 3.) At the end of that period on June 10, 2015, Chemeon "continued to use the 'Metalast' name on Chemeon's website, marking materials" and other company documents, and referred to Chemeon as "formerly Metalast." (*Id.* at 3.)

After Chemeon initiated this action, Defendants asserted counterclaims. (ECF No. 51.) Defendants seek summary judgment on its counterclaim for breach of the Settlement Agreement.

## III.   DISCUSSION

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the

---

[1]According to Chemeon, the adversary action involved ownership of the Metalast word mark and log mark registrations. (ECF No. 137 at 5.)

2

pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). "The usual rule of interpretation of contracts is to read provisions so that they harmonize with each other, not contradict each other. That task of construction is for the court." *Peterson v. Minidoka Cty. Sch. Dist. No. 331*, 118 F.3d 1351, 1359 (9th Cir.), *amended by* 132 F.3d 1258 (9th Cir. 1997).

In opposing summary judgment, Chemeon does not suggest that any disputed facts exist to preclude summary judgment. In fact, the parties agree that the Settlement Agreement is unambiguous and may be construed as a matter of law, but they disagree as to its construction. (ECF No. 137 at 8; ECF No. 147 at 2.) Defendants contend the Settlement Agreement is unambiguous that Chemeon is absolutely prohibited from using the "name Metalast in any fashion or manner whatsoever" after June 10, 2015. (ECF No. 130 at 4-6.) Chemeon counters that Defendants' absolute ban construction is not supported by the express language of the Settlement Agreement, which addresses the "name" of the company and not the "mark." (ECF No. 137 at 10.) Chemeon further argues that even if the Settlement Agreement supports Defendants' absolute ban interpretation, such a construction ignores existing Ninth Circuit law, leads to an unfair result and infringes on Chemeon's First Amendment right to make truthful commercial speech. (*Id.* at 11-19.) Chemeon contends the Settlement Agreement does not prohibit Chemeon from referring to its past association with Metalast. The Court agrees with Chemeon that the Settlement Agreement does not impose an absolute ban on the use of the Metalast name and accordingly denies Defendants' Motion as presented.

Interpretation of a contract is a question of law. *See Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003). "A basic rule of contract interpretation is that '[e]very word must be given effect if at all possible.'" *Musser v. Bank of Am.*, 964 P.2d 51, 54 (Nev. 1998)

(alteration in original) (quoting *Royal Indem. Co. v. Special Serv. Supply Co.*, 413 P.2d 500, 502 (Nev. 1966)). Additionally, when construing a contract, a court should consider the contract as a whole and "should not interpret a contract so as to make meaningless its provisions." *Phillips v. Mercer*, 579 P.2d 174, 176 (Nev. 1978). Under contract law generally, when a term is unambiguous, a court must construe it from the language contained within it. *Chwialkowski v. Sachs*, 834 P.2d 405, 406 (Nev. 1992). A contract is unambiguous if it is not susceptible to more than one interpretation. *See Margrave v. Dermody Props.*, 878 P.2d 291, 293 (Nev. 1994). A court's goal is to effectuate the parties' intent, but when their intent is not clearly expressed in the contract language, it may also consider the circumstances surrounding the agreement. *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 223–24 (Nev. 2005).

Here, the exchanges relating to the Disputed Provision crystalize the parties' intent as to the scope of the prohibition on the use of the trademark in the name "Metalast." As Judge Zive noted, the parties were resolving their "dispute regarding ownership" of "a trademark regarding the name Metalast." (ECF No. 130-1 at 6:24-7:1.) The parties agreed that the Meilings "will continue to use the mark" for the agreed 90 day time period, after they "will no longer be able to use the name Metalast in any fashion or manner whatsoever." (*Id.* at 7:2-8.) They also agreed that after the 90 day time period, "the mark will be owned by Mr. and Mrs. Semas." (*Id.* at 7: 9-10.) The agreement thus involved the ownership and use of the trademark name "Metalast." This was also evidenced in counsel for Semas' assertion that "[w]e want to make sure that there's no confusion in the marketplace and that the new mark that you adopt, the new name, is not confusingly similar." (*Id.* at 17:15-17.) Judge Zive affirmed that "[t]he new name cannot be confusing in the marketplace." (*Id.* at 17:19.) The parties did not expressly state that the Meilings cannot use the word "Metalast" or refer to their past association with "Metalast." Viewed in the context of the parties' dispute over the use of the trademark name and the discussion on the record as to the use of the trademark going forward, the Settlement Agreement does not provide for an absolute ban on the

use of the word "Metalast" in any context whatsoever as Defendants contend in their Motion.

The Court's construction against an absolute ban is consistent with the Ninth Circuit Court of Appeal's interpretation of a similar contractual provision in the context of a dispute over the ownership and use of a trademark name. In *Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 489 (9th Cir. 2000), the agreement at issue provided for Kassbaum, a former member of the band Stepphenwolf, and others to "waive, relinquish and release any and all of their individual or collective rights in the name "STEPPHENWOLF" or any other word or phrase incorporating the name "STEPPENWOLF" for any purpose whatsoever." The agreement further required Kassbaum to give up any "trademark, trade name, service mark, or service name rights . . . in the name "STEPPHENWOLF." *Id.* The court first discussed the history relating to the parties' dispute as to the ownership and control over the use of the trademark in the name Stepphenwolf. *Id.* at 491-92. The court found that "[u]nder these circumstances, it is clear that the contract's broad language 'for any purposes whatsoever,' and 'all other uses of the name 'STEPPENWOLF' in the entertainment industry' refers to the use of the *trade name* Stepphenwolf, and not to the simple use of the name to provide accurate historical information that would not lead reasonable people to think Kassbaum's new band was Stepphenwolf." *Id.* at 492 (emphasis in original). As the court observed, "t]aken out of context, the language 'name STEPPHENWOLF' and "'or any purposes whatsoever' might be read so broadly as to preclude Kassbaum from writing 'Stepphenwolf' on the sidewalk in chalk." *Id.* at 491.

Similarly here, Defendants' broad reading of the Disputed Provision, taken out of context, would also lead to an equally absurd result. Defendants attempt to distinguish *Kassbaum* by arguing that Chemeon's use of the phrases "formerly Metalast" and "formerly known as Metalast" essentially misstates its relationship with Metalast and suggests Metalast products no longer exist. (ECF No. 130 at 6.) This may be a valid point. However, Defendants' Motion does not present the issue of whether such use of

the Metalast name breached the Settlement Agreement. Instead, Defendants' Motion argues that the Settlement Agreement is unambiguous that Chemeon is absolutely prohibited from using the "name Metalast in any fashion or manner whatsoever" after June 10, 2015. (ECF No. 130 at 4-6.) The Court does not interpret the Settlement Agreement to unambiguously impose such an absolute ban. For this reason, summary judgment is denied.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Defendants' Motion for Partial Summary Judgment on Counterclaim for Breach of Contract (ECF No. 130) is denied.

DATED THIS 15th day of March 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE