**tUNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| CHEMEON SURFACE TECHNOLOGY, LLC, | Case No. 3:15-CV-00294-CLB |
|---|---|
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY** |
| v. | |
| METALAST INTERNATIONAL, INC., *et. al.*, | |
| Defendants. | [ECF Nos. 664, 666, 673] |

This dispute has a long and difficult history spanning over many years, several lawsuits, and various courts. It arises from the breakup of a business and a disagreement over the terms of a subsequent settlement agreement entered into between Plaintiff Chemeon Surface Technology, LLC's ("Chemeon"), and Counter-Defendants Dean Meiling ("Dean") and Madylon Meiling ("Madylon") (collectively referred to as "Plaintiffs" or "the Meilings"), and Defendants and Counterclaimants David M. Semas ("Semas"), Metalast International, Inc. ("MI-INC"), and Metalast International, LLC ("MI-LLC") (collectively referred to as "Defendants").

Following a bench trial, the Court entered judgment in favor of Defendants in this matter on February 23, 2021. (ECF Nos. 627, 629). Chemeon appealed. On June 2, 2022, the Ninth Circuit affirmed in part, and vacated and remanded this case in part. (ECF No. 657.) Specifically, the Ninth Circuit: (1) affirmed the Court's judgment in favor of Defendants' breach of contract counterclaim; (2) found the Court did not err in excluding Chemeon's trademark affirmative defense evidence and in excluding an Occupational Safety and Health Administration ("OSHA") litigation brief; (3) affirmed the Court's judgment denying Chemeon's trademark infringement claims; and (4) found the Court did not abuse its discretion in denying Chemeon's claim for attorney fees under the Lanham Act. (*Id.*)

However, the Ninth Circuit held that the Court erred when it granted summary judgment dismissing Chemeon's Third Cause of Action for trademark cancellation based solely on the fact that Chemeon did not have an interest in its "own mark." (*Id.*) On remand, the Ninth Circuit directed the Court to determine whether Chemeon's other asserted interests are sufficient to establish standing to pursue the trademark cancellation claim related to the "Metalast" trademark. (*Id.*)

Following remand, the Court vacated the judgment granting summary judgment as to Chemeon's cancellation of the Metalast trademark registration claim only, (*see* ECF No. 481), and ordered the parties to file motions for summary judgment on the sole issue of whether Chemeon has standing to pursue a trademark cancellation claim. (ECF No. 663.) Thus, Chemeon file the instant motion for summary judgment, (ECF Nos. 664, 665). Semas responded to the motion and filed a cross-motion for summary judgment, (ECF No. 666), to which Chemeon replied, (ECF Nos. 667, 668, 670). Semas filed a reply to Chemeon's response to the cross-motion. (ECF 671.) Finally, Chemeon filed a motion for leave to file a sur-reply, (ECF No. 673), to which Semas opposed, (ECF No. 674). For the reasons discussed below, Chemeon's motion for summary judgment, (ECF No. 664), is denied, Semas's cross-motion for summary judgment, (ECF No. 666), is granted, and Chemeon's motion for leave to file a sur-reply, (ECF No. 673), is denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Chemeon's Third Claim for Relief is for trademark cancellation pursuant to 15 U.S.C. §§ 1064, 1119, and 1120 of the Metalast Trademark, which is U.S. Registration No. 2963106 ("'106 Registration"). (ECF No. 535.)[2] This claim is based on the alleged

---

[1] The only issue to be addressed in this decision is whether Chemeon has standing to pursue its trademark cancellation claim. Therefore, the Court will only address the facts and procedural history that are relevant to this claim.

[2] Although the Court originally addressed the Third Claim for Relief as pled in Chemeon's Second Amended Complaint (ECF No. 348), the Court addresses and cites to Chemeon's Third Amended Complaint (ECF No. 535) in this Order as it is the operative complaint and contains the same allegations in relation to the Third Claim for Relief.

2

fraudulent renewal of the '106 Registration by Semas on June 21, 2015. (*Id.*) Chemeon's Third Claim for Relief specifically alleges that in 2015 Semas procured renewal of the '106 Registration by filing a fraudulent Declaration of Use to the USPTO, wherein Semas attached specimens stolen from Chemeon to falsely serve as evidence of current commercial use. Chemeon further alleges that the stolen specimens attached to Semas' Declaration only show use of the mark in 2003 and 2008, years before the renewal application was submitted in 2015, thereby mispresenting current use of the mark. According to these allegations, "Chemeon has been and will continue to be damaged by D. Semas's purported federal trademark registration of the METALAST mark." (*Id.* at ¶ 210.) Chemeon states that Semas "enjoys the approval of exclusive rights in the METALAST mark, which it has used, threatens to continue to use, and has offered to sell to competitors of Chemeon, to disrupt [its] legitimate business operations." (*Id.* at ¶ 211.) Chemeon concludes by declaring that pursuant to the applicable statutes, "[it] is and will be damaged by ['106 Registration], and such registration should be cancelled by this Court." (*Id.* at ¶ 212.)

On June 19, 2017, Chemeon moved for summary judgment on its claim seeking to cancel the '106 Registration. (ECF No. 315 at 23–25.) On March 20, 2018, the Court *sua sponte* raised the issue of "standing," finding that Chemeon "has not established that it has standing to bring a claim for cancellation of the Metalast wordmark," and requesting supplemental briefing on the issue. (ECF No. 398 at 21–24 (citing, *e.g., Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346 (9th Cir. 1984)).) After receiving this supplemental briefing, the Court ruled Chemeon lacked standing to seek cancellation of the '106 Registration, denied Chemeon's motion for summary judgment on the cancellation claim, and dismissed Chemeon's Third Claim for Relief for "for lack of standing." (ECF No. 463 at 12–13.) Specifically, the Court held that, under *Star-Kist*, a claimant must have an "actual commercial or pecuniary interest in [its] own mark" to have "standing" to seek cancellation, and that Chemeon had not made this showing with respect to the Metalast word mark. (*Id.* at 12 (quoting *Star-Kist*, 735 F.2d at 349).)

Chemeon subsequently appealed this ruling. (ECF No. 648.) On appeal, the Ninth Circuit vacated the Court's trademark cancellation decision and remanded for further proceedings on the issue. (ECF No. 657 at 5-6.) The Ninth Circuit held that *Star-Kist* did not create a bright-line rule that a trademark cancellation petitioner must have an interest in its "own mark" to establish standing. (*Id.* at 5.) Rather, the Ninth Circuit held, *Star-Kist* requires only that a petitioner have a "real interest" in trademark cancellation, an issue that must be resolved case-by-case based on each case's unique facts and circumstances. (*Id.*) The Ninth Circuit also noted: "the Supreme Court's decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), arguably provides the proper basis for analyzing this trademark cancellation claim." (*Id.* at 5 n.5.)

The parties have each filed motions for summary judgment, (ECF Nos. 664, 666), with respect to the standing issue, which are now fully briefed and ripe for decision.

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122,

1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

///

///

///

**III.    DISCUSSION**

    **A.    Cancellation of Metalast Wordmark – Standing**

To pursue the cancellation claim, Chemeon bears the burden of proving it has standing to do so. This requires Chemeon to demonstrate both constitutional standing under Article III, Section 2 of the Constitution ("Article III Standing") and standing under 15 U.S.C. § 1064 ("Statutory Standing"). Each is addressed in turn.

        **1.    Article III Standing**

To satisfy Article III Standing, Chemeon must establish the following: (1) it has suffered an injury in fact that is both concrete and particularized and actual or imminent; (2) the injury is fairly traceable to the challenged action; and (3) it is likely, rather than merely speculative, that a favorable judicial decision will redress the injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Chemeon failed to address whether it has Article III Standing. (*See* ECF No. 664.) Chemeon's cancellation claim, as asserted in the complaint, alleges Chemeon will be injured by Defendants' use of its registered trademark, in market competition. However, Chemeon cannot sue to invalidate the trademark simply because Chemeon and Metalast both compete in the same market. Specifically, in *Already, LLC v. Nike, Inc.*, the United States Supreme Court rejected the assertion that Article III standing could be established merely by market competition. 568 U.S. 85, 99 (2013). In that case, the Supreme Court explained that "[t]aken to its logical conclusion, the theory seems to be that a market participant is injured for Article III purposes whenever a competitor benefits from something allegedly unlawful--whether a trademark, the awarding of a contract, a landlord-tenant arrangement, or so on. We have never accepted such a boundless theory of standing." *Already,* 568 U.S. at 99. Thus, Chemeon offers no evidence that it will suffer "concrete and particularized" injury if the Court fails to cancel the '106 Registration. Based on this and the record before the Court, Chemeon has not established Article III Standing. Therefore, on this basis alone, Chemeon's claim for cancellation fails.

///

///

### 2. Statutory Standing

However, even assuming Chemeon had established Article III Standing, Chemeon must also establish it has Statutory Standing under 15 U.S.C. § 1064 to proceed with this claim. Initially, the Court dismissed Chemeon's cancellation claim, finding Chemeon lacked standing pursuant to *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 348 (9th Cir. 1984) (quoting *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091 (Fed. Cir. 1984)); *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1228-1229 (9th Cir. 2008). The Court found that under *Star-Kist*, to establish standing as a cancellation petitioner, Chemeon "must show a real and rational basis for [its] belief that [it] would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in [its] own mark." *Star-Kist*, 735 F.2d at 349. Specifically, the Court found that because Chemeon could not show harm to its pecuniary interests— stemming from harm to its own marks—from David's registration of the Metalast mark, Chemeon lacked standing to seek its cancellation. (ECF No. 481 at 12-13.) The Court further noted that Chemeon previously agreed to stop selling products and services under the Metalast name, which also weighed in favor of finding Chemeon lacked standing to cancel the Metalast trademark. (*Id.* at 13 n.5. (citing *Smith v. Entrepreneur Media, Inc.*, 667 F. App'x 975 (9th Cir. 2016)).)

As discussed above, upon remand, the Ninth Circuit found that *Star-Kist* did not create a bright-line rule that a trademark cancellation petitioner must have an interest in its "own mark" to establish standing. (ECF No. 657 at 5.) Rather, the Ninth Circuit held, *Star-Kist* requires only that a petitioner have a "real interest" in trademark cancellation, an issue that must be resolved case-by-case based on each case's unique facts and circumstances. (*Id.*)

The Ninth Circuit also noted, "the Supreme Court's decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), arguably provides the proper basis for analyzing this trademark cancellation claim." (*Id.* at 5 n.5.) Based on the Ninth's Circuit's direction, the Court will first analyze whether Chemeon has

7

established Statutory Standing under the principles outlined in the *Lexmark* decision. However, the Court will also analyze whether Chemeon has standing under *Star-Kist* and the "real interest" test identified by the Ninth Circuit.

### i. *Lexmark* and the "Zone of Interests"

The Court starts is analysis under *Lexmark*. Although *Lexmark* involves standing to sue under 15 U.S.C. § 1125, and not standing to seek cancellation under § 1064, the Federal Circuit has opined that the "zone of interests" test also applies equally to cancellation claims. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303-05 (Fed. Cir. 2020), cert. denied, 141 S.Ct. 2671 (Mem) (May 24, 2021). Thus, pursuant to *Lexmark*, to establish standing to pursue a cancellation claim, Chemeon must show: (1) that it is within the zone of interests, or the class of plaintiffs Congress has authorized to sue under § 1064; and (2) that its injuries are proximately caused by conduct prohibited under § 1064. "Whether a plaintiff comes within the zone of interests is an issue that requires [the court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 127.

"The statute authorizes suit ['by any person who believes that he is or will be damaged'] by a defendant's [trademark registration or renewal]." *Id.* at 129 (citing 15 U.S.C. § 1064). A literal reading of this broad class of plaintiffs creates the "very unlikelihood that Congress meant to allow all factually injured plaintiffs to recover [and] persuades this Court that [§1064] should not get such an expansive reading." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 261 (1992). "Congress legislates against the background of our [statutory] standing doctrine, which applies unless it is expressly negated." *Bennett v. Spear*, 520 U.S. 154, 163-64 (1997); *See Block v. Community Nutrition Institute*, 467 U.S. 340, 345-48 (1984); *See also Cf. Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 532-33 (1983).

In determining the boundaries of the applicable zone of interest, the Court looks to the intent Congress placed into the Lanham Act "since the Act includes an 'unusual, and

extraordinarily helpful,' [detailed statement of the statute's purposes.]" *Lexmark,* 572 U.S. at 131 (quoting *H. B. Halicki Productions v. United Artists Communications, Inc.*, 812 F. 2d 1213, 1214 (9th Cir. 1987). 15 U.S.C. § 1127, provides:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to **protect** registered marks used in such commerce from **interference by State, or territorial legislation**; to **protect** persons engaged in such commerce **against unfair competition**; to **prevent fraud and deception** in such commerce by the **use of reproductions, copies, counterfeits, or colorable imitations** of registered marks; and to **provide rights and remedies stipulated by treaties** and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

(emphasis added).

The first protection emplaced into § 1127 by Congress is against legislative interference in a registered copyright, which is not argued by either party and therefore does not apply in this case. The second protection is against unfair competition which is applicable here because it pertains to the arguments brought forth by Chemeon. The third protection prevents fraud by use of counterfeits and imitations of registered marks. Although Chemeon makes claims of fraud and copying of its specimens, these allegations are specific to the trademark renewal process and are not "use of reproductions, copies, counterfeits, or colorable imitations of registered marks" because it is undisputed that Defendants owned the registered mark after June 9, 2015. § 1127; (*See* ECF No. 535 ¶ 109-12). Therefore, the third protection is also inapplicable. The final protection in § 1127 concerns rights and remedies stipulated by treaty and is not argued by either side here; thus, it is also inapplicable. Of the specific functions of the Lanham Act in the language of the statute's purpose, the only relevant function to Chemeon's cancellation claim concerns protection against unfair competition.

"Although 'unfair competition' was a 'plastic' concept at common law, it was understood to be concerned with injuries to business reputation and present and future sales." *Lexmark*, 572 U.S. at 134 (quoting *Ely-Norris Safe Co. v. Mosler Safe Co.*, 7 F. 2d 603, 604 (2nd Cir. 1925) (L. Hand, J.)). To be within the zone of interest created by

1    Congress to protect against unfair competition under the Lanham Act, a plaintiff must
2    "allege an injury to a commercial interest in reputation or sales." *Id.*
3        Here, Chemeon has provided only vague and conclusory statements of damage,
4    and its allegations in the TAC show no injuries to a commercial interest in reputation or
5    lost present and future sales. (*See* ECF 535 at 41-43.) Chemeon's arguments that it will
6    be particularly damaged by Defendant's use of the mark cannot stand because this Court
7    has already held, and the 9th Circuit Court has affirmed, that Chemeon owns neither the
8    Metalast brand or mark, nor the TCP-HF and AA-200 sub-marks. (ECF No. 481 at 10-12;
9    ECF No. 660 at 1.) "It may well be that [Defendants] false and fraudulent declaration
10   misled the PTO into registering its trademarks. And it is plausible to suppose that there is
11   some generalized injury that results from the PTO's Register of Trademarks containing
12   marks that it shouldn't contain. But any such injury is not particular to [Chemeon] and
13   cannot support its standing." *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 904 (8th Cir.
14   2016). Therefore, Chemeon has not established that it is within the zone of interests, or
15   class of plaintiffs Congress has authorized to sue under 15 U.S.C. § 1064.

### ii. *Lexmark* and Proximate Cause

17       Assuming, *arguendo*, Chemeon had established that it was within the zone of
18   interests, it still lacks proximate cause. It is a general presumption "that a statutory cause
19   of action is limited to plaintiffs whose injuries are proximately caused by violations of the
20   statute." *Lexmark*, 572 U.S. at 137. Generally, proximate cause rules out an injury too
21   remote from the specific violation, thus, the Court must determine "whether the harm
22   alleged has a sufficiently close connection to the conduct the statute prohibits." *Id*. at 133.
23       In this context, a plaintiff "must show economic or reputational injury flowing directly
24   from the [trademark registration]" *Id.* at 134. Here, Chemeon erroneously claims
25   reputational damages caused by the '106 Registration because Chemeon owned the
26   goodwill associated with the Metalast brand. (*See* ECF No. 535 at 15.) "Goodwill is a form
27   of intangible property that is inextricably bound up with a trademark; the two are legally
28   inseparable." 1A Anne Gilson LaLonde, Gilson on Trademarks § 3.10 (Matthew Bender).

Chemeon foreclosed this argument in the 2015 Settlement Agreement, when the Meilings agreed that Semas is the registered and legal owner of the Metalast marks and the Meilings would not use "Metalast" "in any fashion or manner whatsoever." (ECF No. 535 at 19-21.) Chemeon fails to argue any economic or reputational damage caused by Defendant's renewal of the trademark. Thus, even assuming Chemeon is within the zone of interests, it fails to sufficiently establish injuries that are proximately caused by violations of the statute.

### iii.   *Star-Kist* and "Real Interest"

Finally, the Court turns to whether Chemeon has established standing under *Star-Kist* and the "real interest" analysis. The Court finds that Chemeon has also failed to establish a "real interest" and "show a real and rational basis for [its] belief that [it] would be damaged by the ['106 Registration]" pursuant to *Star-Kist Foods*, 735 F.2d at 349.

15 U.S.C. § 1064 creates a cause of action to cancel a trademark "by any person who believes that he is or will be damaged" by the trademark registration. 15 U.S.C. § 1064. Furthermore, § 1064(3) clarifies that such an action may be brought "[a]t any time if the registered mark becomes the generic name for the goods or services, … has been abandoned, or its registration was obtained fraudulently…." *Id.* The Lanham Act requires only "that the cancellation petitioner plead and prove facts showing a real interest in the proceeding in order to establish standing." *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1092 (Fed. Cir. 1984); *See Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1026 (Fed. Cir. 1982). While "no absolute test can be laid down for what must be proved," a plaintiff must show it is "more than an intermeddler," and there is a "real controversy between the parties." *Id.* at 1028-29. The plaintiff "must show a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in his own mark." *Star-Kist Foods*, 735 F.2d at 349. Here, Chemeon has provided only vague and conclusory statements of damage, and its allegations show no "real and rational basis for [Chemeon's] belief" that it will be damaged by the continuation of the trademark

11

registration. *Id.*

Rather, Chemeon makes a blanket declaration that it "has been and will be damaged" from Metalast's registration without any further explanation. (ECF No. 535 at 42, ¶ 210.) These allegations fail to describe any connected damages, do not articulate a "real interest", and are ironically similar to Chemeon's selectively quoted case, *Sarieddine v. D&A Distribution*. In *Sarieddine*, the Court held that:

> Where, as here, the moving party's pleading does not include a single allegation of damage resulting from the opposing side's trademarks, the party lacks a 'real interest' in the outcome of the proceedings and therefore lacks standing. *Cf. Plus Mgmt., Inc. v. Cantrell*, No. CV 09-2511-GHK (PLAx), 2009 WL 10675362, at *1-2 (C.D. Cal. Oct. 8, 2009) (finding that plaintiff lacked standing to bring cancellation claim because it did not sufficiently allege damage from defendant's trademark).

*Sarieddine v. D&A Distribution*, No. CV 17 2390 DSF (SKx), 2018 U.S. Dist. LEXIS 237196, at *10 (C.D. Cal. Apr. 24, 2018).  Thus, the Court finds that Chemeon has also failed to establish a "real interest" and "show a real and rational basis for [its] belief that [it] would be damaged by the ['106 Registration]" pursuant to *Star-Kist Foods*, 735 F.2d at 349.

### iv. Indemnification – *Semas v. Chemetall* Action

Finally, to the extent Chemeon argues it has standing to pursue cancellation of the '106 Registration because it has a duty to defend the defendants in *Semas v. Chemetall US, Inc.*, Case No. 3:19-cv-000125-CLB, this argument also fails. Chemeon's motion for summary judgment cites to *World Market Center Venture, LLC v. Texas International Property Associates*, Case No. 2:08-CV-01753, 2009 WL 3303758 (D. Nev. Oct. 14, 2009), to support its assertion. However, the *World Market* case held that "being sued for infringement is sufficient to support standing for a counterclaim for cancellation." 2009 WL 3303758 at *3 (emphasis added). As Semas points out in his cross-motion, it would be procedurally proper for the named defendants in the *Semas* infringement action to assert a counterclaim for cancellation—not for Chemeon to claim standing in this action based on a potential claim in a separate action. (*See* ECF No. 666 at 25.) In its initial ruling on

1  the standing issue, the District Court found that despite Chemeon's argument that it is
2  harmed because it may have to indemnify others in the *Semas* infringement action, this
3  does not somehow create standing for Chemeon to pursue cancellation in this action. (*See*
4  ECF No. 481 at 14.) The Court agrees.

5  In sum and based on the above, the Court finds that Chemeon lacks standing to
6  pursue its cancellation claim of the '106 Registration as it has not established Article III
7  Standing or Statutory Standing based on the principles of either *Lexmark*/*Corcamore* or
8  *Star-Kist.* Accordingly, Chemeon's motion for summary judgment, (ECF No. 664), is
9  denied, and Semas's motion for summary judgment, (ECF No. 666), is granted.

**B.     Chemeon's Motion for Leave to File Sur-reply**

Finally, before the Court is Chemeon's motion for leave to file sur-reply, (ECF No. 673). "A party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." LR 7-2(g). The Court will only find good cause under LR 7-2(g) if Plaintiff was reasonably diligent in seeking leave to supplement. *See, e.g., De Luna v. Sunrise Hosp. & Med. Ctr., LLC*, Case No. 2:17-cv-01052-JAD-VCF, 2018 WL 4053323, at *5 (D. Nev. Aug. 24, 2018). Further, the Court will only find good cause exists to allow Plaintiff's supplemental briefing if the proposed briefing will make a substantive difference. *See, e.g., Morrison v. Quest Diagnostics Inc.*, Case No. 2:14-cv-01207-RFB-PAL, 2016 WL 6246306, at *3 (D. Nev. Oct. 24, 2016), *aff'd*, 698 F. App'x 350 (9th Cir. 2017) (declining to consider supplemental documents filed in opposition to summary judgment motions because the supplemental documents failed to raise any issues of material fact).

Good cause is lacking here because the proposed sur-reply addresses "evidentiary objections," which do not impact the Court's ultimate analysis and decision that Chemeon lacks standing to seek cancellation of the challenged Metalast trademark. Lacking good cause, Chemeon's motion for leave to file a sur-reply, (ECF No. 673), is denied.

///

///

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Chemeon's motion for summary judgment, (ECF No. 664), is **DENIED**.

**IT IS FURTHER ORDERED** that Semas's cross-motion for summary judgment, (ECF No. 666), is **GRANTED**.

**IT IS FURTHER ORDERED** that Chemeon's motion for leave to file sur-reply, (ECF No. 673), is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATE:** February 3, 2023.

_____
**UNITED STATES MAGISTRATE JUDGE**